**SIDDIQUI LAW, a Prof. Corp.**
**Omar A. Siddiqui, Esq.** (Bar No. 213581)
**Daniel M. Josephson, Esq.** (Bar No. 245195)
Park Tower, Suite 700
695 Town Center Drive
Costa Mesa, California 92626
www.SIDLAWPC.com
Telephone: (714) 384-6650
Facsimile: (714) 384-6651
osiddiqui@sidlawpc.com
djosephson@sidlawpc.com

Attorneys for Plaintiff,
**CHRISTOPHER WHITE**

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| CHRISTOPHER WHITE, an individual residing in the State of California,<br><br>Plaintiff,<br><br>vs.<br><br>EDELMANN USA, INC., a Delaware Corporation; HUBERGROUP USA, INC, a Delaware Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT FOR:**<br><br>1. **NEGLIGENCE;**<br>2. **NEGLIGENCE PER SE;**<br>3. **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS;**<br>4. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>5. **FAILURE TO WARN**<br>　　**(I) COUNT ONE: NEGLIGENT FAILURE TO WARN;**<br>　　**(II) COUNT TWO: STATUTORY FAILURE TO WARN;**<br>6. **STRICT LIABILITY – ULTRAHAZARDOUS ACTIVITIES;**<br>7. **FRAUDULENT CONCEALMENT;**<br>8. **BATTERY (TOXIC TRESPASS);**<br>9. **PREMISES LIABILITY; AND**<br>10. **DISCRIMINATION BASED ON DISABILITY STATUS – FAILURE TO PROVIDE REASONABLE ACCOMMODATION (IN VIOLATION OF GOVERNMENT CODE SECTION 12940(A))**<br><br>**[DEMAND FOR TRIAL BY JURY]** |

**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT**

NOW COMES Plaintiff CHRISTOPHER WHITE, an individual, who alleges as follows for his complaint against Defendants EDELMANN USA, INC., a Delaware Corporation ("EDELMANN") and HUBERGROUP USA, INC., a Delaware Corporation ("HUBERGROUP"), and DOES 1 through 10, inclusive (collectively, "Defendants"):

## SUMMARY

1.    Plaintiff CHRISTOPHER WHITE was employed by Defendant HUBERGROUP as an ink technician in a facility maintained and operated by Defendant EDELMANN in Ontario, California, USA. Plaintiff WHITE sustained substantial injuries caused by his exposure to hazardous, toxic, and carcinogenic chemicals while working in a small, improperly ventilated office at Defendants' facility for over approximately 4½ + years.

2.    Following an extended period of feeling increasingly ill, on or around August 2019, Plaintiff WHITE was diagnosed with cancer (Non-Hodgkin's Lymphoma). Plaintiff WHITE continues to suffer intense and significant pain and damages resulting from his life-threatening cancer diagnosis caused by Defendants' acts and omissions. Among other misconduct as described fully herein, Defendants: failed to provide Plaintiff a safe workspace; failed to address Plaintiff's (and other co-workers') numerous complaints regarding the toxic work environment; failed to provide Plaintiff with personal protective & safety equipment; and failed to warn Plaintiff that he was being exposed to known carcinogenic hazards and deadly chemicals.

## JURISDICTION & VENUE

3.    This is a civil action between citizens of different states, and the amount in controversy far exceeds $75,000+. There is complete diversity of citizenship between the parties. Plaintiff is a resident and citizen of the State of California. Defendant EDELMANN is a Delaware Corporation with a principal place of business located in the County of San Bernardino, State of California. Defendant

**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT**

1  HUBERGROUP is a Delaware Corporation doing business in the County of San
2  Bernardino, State of California. As such, this Court has original jurisdiction over this
3  action under 28 U.S.C. § 1332(a).

4      4.      This Court has personal jurisdiction over the Defendants because the
5  Defendants have engaged in substantial business activities in California and have
6  committed tortious acts within the state.

7      5.      Venue is proper in this district under 28 U.S.C. § 1391 (b) and (c)
8  because: Plaintiff resides here and primarily rendered his services to Defendants here;
9  Defendants are registered and conduct business within this district; the tortious acts
10  were targeted towards, and resulted in, substantial injury that occurred in this district;
11  the acts and events on which the claims in this Complaint are based took place in this
12  district; this district is where Plaintiff has suffered the primary harm from
13  Defendants' acts and/or omissions; and Defendants are subject to personal
14  jurisdiction herein this district.

15                                    **PARTIES**

16      6.      Plaintiff CHRISTOPHER WHITE ("Plaintiff" or "WHITE") is now, and
17  at all times herein mentioned, an individual residing in the City of Murrieta, County
18  of Riverside, State of California.

19      7.      Defendant HUBERGROUP is a Delaware corporation organized and
20  existing under the laws of the State of Delaware, registered to do business in the State
21  of California, doing business in the County of San Bernardino, State of California.

22      8.      Defendant EDELMANN is a Delaware corporation organized and
23  existing under the laws of the State of Delaware, registered to do business in the State
24  of California, with its principal place of business located in the City of Ontario,
25  County of San Bernardino, State of California.

26      9.      The true names and capacities, whether individual, corporate, associate,
27  representative, partnership, or otherwise, of Defendants named herein as DOES 1
28  through 10, inclusive, are unknown to Plaintiff who therefor sues said Defendants by

such fictitious names. Plaintiff will amend this Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed, believes, and based thereon alleges that each of the Defendants, including the fictitiously named DOE Defendants, performed, participated in, and/or abetted the acts alleged herein, and is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages herein were legally caused by those Defendants, among others.

10.    Plaintiff is informed, believes, and based thereon alleges that at all times mentioned herein, Defendants, including DOES 1 through 10, and each of them, were agents, servants, employees, affiliates, partners, joint ventures, co-conspirators or other representatives of each remaining defendant, and that each Defendant in doing the things alleged herein committed such acts or omissions within the course and scop of his, her, or its respective agency, servitude, employment, partnership, conspiracy, affiliation or other representation or with the permission, knowledge, approval and consent of the other defendants in that each and every act of each said defendant was ratified by the others. Plaintiff is informed, believes, and based thereon alleges that each of the Defendants, including DOES 1 through 10, are responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were legally caused by those defendants, among others.

## GENERAL ALLEGATIONS

11.    On or about April 2013, WHITE began working for Defendant HUBERGROUP USA, INC. ("HUBERGROUP") as an employee. HUBERGROUP is in the business of ink manufacturing and distribution.

12.    At the time he was hired by HUBERGROUP in 2013, Plaintiff WHITE was a young and healthy 32-year-old, with no pre-existing medical conditions. He had always been, and continued to be, a non-smoker and in good health (until his illness described herein). He had received yearly physical exams, each of which had been unremarkable.

13.    In or about January 2015, WHITE was assigned to work by

-4-

HUBERGROUP as an "in-plant" ink technician at a facility operated, owned, maintained, and controlled by Defendant EDELMANN USA, INC. ("EDELMANN") located at 2150 South Parco Avenue, in the City of Ontario, San Bernardino County, California, USA. The facility arrangement between HUBERGROUP and EDELMANN was memorialized in a Cooperation Agreement between the two companies, executed in or about August 2015 (the "Cooperation Agreement").

14.     Over the course of several (over approximately 4½+) years – for approximately ten-to-eleven hours a day, five-to-six days per week, Plaintiff worked in a small, stuffy, stifling room in which the stagnant air was filled with various noxious smells and suffocating particulate matter from a variety of unusual inks. Absolutely no ventilation was provided by EDELMANN or HUBERGROUP for the mixing of dyes, inks, and/or solvents for at least the first approx. three years of Plaintiff's employment at the EDELMANN facility.

15.     Over time, WHITE began experiencing tremendous breathing difficulties and persistent coughing. WHITE had not suffered such severe and intense symptoms before, and was deeply concerned about their cause. After several years of working with HUBERGROUP and its harmful and dangerous chemicals and substances at the EDELMANN facility, however, the cause of these symptoms started to become clear to WHITE.

16.     Unlike WHITE, HUBERGROUP and EDELMANN were both aware of the harmful environment in which they forced WHITE to work and were also aware that WHITE was suffering as a result of such dangerous environment.

17.     In fact, Plaintiff's working environment was so chemically toxic that, on or about April 25, 2019, WHITE became extremely dizzy and disoriented from the fumes permeating his workspace. The fumes, dizziness and disorientation caused WHITE to smash his head on a metal cabinet upon standing up, causing significant injury. He had never lost his orientation like this before. Presumably, as a result of WHITE's injury, HUBERGROUP Human Resources Generalist, Selina Surface,

PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT

generated A *Physician Work Activity Status Report* (the "Report"). The Report, however, did nothing to help protect or treat WHITE. No action whatsoever was taken by either HUBERGROUP or EDELMANN to address the circumstances of WHITE's harmful workspace, even after preparation of the Report. In fact, Plaintiff WHITE's workspace remained unventilated with Plaintiff WHITE having no access to any personal protective equipment ("PPE") to minimize his exposure to the carcinogenic hazards.

## OTHERS NOTICE THE TOXIC CONDITIONS

18.    Several of Plaintiff WHITE's co-workers observed the intolerable conditions in WHITE's workspace and voiced their deep concerns about such conditions. Some of WHITE's co-workers remarked, "*Wow, your office stinks*" and "*I never want to come into your workspace*," or words to that effect. Between 2015 and 2016, one particular co-worker, Eric Cabrera, temporarily covered Plaintiff WHITE's duties while WHITE was away from the Edelmann facility. Mr. Cabrera intermittently performed his work from the same toxic workspace at which WHITE worked. During such time, Mr. Cabrera frequently complained about the workspace. Mr. Cabrera made no secret about the fact that he was uncomfortable working in such an environment, often getting headaches. He frequently told Plaintiff, "*if I ever get sick from this stuff, I've told my wife 'you better go after them'*."

19.    In addition, on more than one occasion, even Branch Manager Leonard Chavez would comment about how Plaintiff WHITE's office smelled horrible. WHITE repeatedly reminded Mr. Chavez that he had been asking for some form of adequate ventilation and would even joke darkly that the only way he was going to get a vent in his room was if his lung were seen by management on the floor covered in glitter and chemicals. Instead of helping abate the noxious situation, HUBERGROUP would instruct Plaintiff WHITE to have *EDELMANN* fix the issues since he "*work[ed] in their facility*." Focusing more on correcting the problem than finding someone to blame, Plaintiff WHITE also repeatedly asked the EDELMANN

**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT**

maintenance staff and management for their help. He received none.

20.    In or about late 2018, EDELMANN finally added a tiny vent fan, which provided negligible air circulation at best. Even with this tiny vent fan, employees such as Mr. Juan Chaidez who covered for WHITE still often complained that the workspace would cause sickness, headaches and nausea for him too.

**BROAD EXPOSURE TO TOXIC CHEMICALS**

21.    During his time with HUBERGROUP at the EDELMANN facility, Plaintiff WHITE was exposed to at least the following chemicals: Acetone, printers blanket wash, UV photo initiators, monomers, oligomers, polyester acrylate, aerosol powders, benzene, Benzophenones, soft feel coatings and cross-linkers, dry and blended pigments, finished metallic UV and conventional inks, pearlescent powders (super fine micron size), titanium dioxide opaque white, water-based coatings, and UV coatings among others.[1]

22.    Most of these chemicals were known to HUBERGROUP and EDELMANN to cause cancer. This was especially true of the more modern UV coatings, which contain a number of dangerous chemicals. These types of chemicals and substances cause harmful exposure and severe injuries and harms, including various cancers and other severe medical conditions. On information and belief, the route of exposure for these chemicals was inhalation (breathing), skin (or eye) absorption contact, and/or ingestion by Plaintiff. As described herein, these exposures occurred on a daily basis, at least 5-6 days a week, for several years.

23.    In addition, no clear warning or notice was provided to Plaintiff WHITE regarding the known and significant risks of cancer resulting from his exposure to these toxic and carcinogenic chemicals.[2]

---

[1] These chemicals and toxic substances are listed as carcinogenic and/or cause reproductive harm on the Proposition 65 Chemical List (https://www.p65warnings.ca.gov/chemicals).

[2] See www.P65Warnings.ca.gov: California statutory law – "Proposition 65 requires businesses to provide warnings … about significant exposures to chemicals that cause cancer, birth defects or other reproductive harm. These chemicals can be in the products that Californians purchase, in their

**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT**

24.     In or around July 2019, WHITE was becoming very ill and experienced intractable, searing abdominal pain. He went to the Emergency Department of the Rancho Springs Medical Center where he was examined and received various lab tests. The tests revealed, among other things, that WHITE had enlarged organs, including an inflamed pancreas, spleen, and liver. Shortly thereafter, in the beginning of August 2019, with his severe abdominal pain failing to abate, WHITE visited the Temecula Valley Hospital for further examination. After extensive testing, on or about August 7, 2019, Plaintiff WHITE was formally diagnosed with cancer -- Non-Hodgkin's Lymphoma ("NHL").

25.     WHITE has regularly visited his medical providers, including doctors, nurses and others, numerous times since learning he was suffering from NHL, the nearly intolerable, constant pain and symptoms of which continue to date. Plaintiff's NHL cancer is life threatening.

26.     Absent an effective intervention, NHL will lead to one of two outcomes: either a hastened death or a prolonged, extremely painful condition that will last the rest of WHITE's life. Moreover, WHITE's condition has prevented him from returning to work. His doctors continue to diagnose him as "at-risk," which is especially problematic and dangerous given the ongoing global COVID-19 pandemic. Medical professionals familiar with WHITE's condition have stated that the effects of his NHL "*will never go away.*"

27.     Plaintiff WHITE's exposure to Defendants' toxic, harmful, dangerous, noxious, and carcinogenic chemicals and chemical hazards has caused him serious harm, injuries, severe continuing illness, and other damages to be determined. Plaintiff WHITE's physical injuries include, but are not limited to: NHL, tumors, ongoing and intense physical pain & suffering and discomfort throughout his body, penetrating headaches, persistent coughing, acute difficulty breathing, intolerable

---

homes or workplaces, or that are released into the environment. By requiring that this information be provided, Proposition 65 enables Californians to make informed decisions about their exposures to these chemicals."

**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT**

gastrointestinal problems, and chronic fatigue, among others. In addition to these symptoms, Plaintiff WHITE has been forced to endure immense fear, battle grievous depression, anxiety, mental anguish, emotional distress, and loss of sleep. Moreover, he has suffered significant financial distress and injury resulting from his loss of income, mounting out-of-pocket medical expenses, limited health insurance coverage, and the lack of affordability of future treatments. In or around the summer 2020, Plaintiff WHITE was forced to begin paying for all of his own medical care and his family's medical insurance out-of-pocket.

**LACK OF SAFTEY MEASURES**

28. At no time during the six years in which Plaintiff WHITE worked with HUBERGROUP (including the time at EDELMANN) was he offered or provided with any trainings, meetings, or seminars on safety, hazardous materials, personal protective equipment or any other topic that could be considered relevant to the toxic conditions in which he was forced to work. He was, however, required to attend and participate in several meetings regarding sexual harassment in the workplace. Thus, HUBERGROUP was more than capable of establishing, providing and promoting certain forms of training, but elected to forego its duties with respect to environmental health and safety training for its employees in regards to exposure to dangerous chemicals.

29. In addition, on information and belief, HUBERGROUP employed a safety officer who never visited Plaintiff WHITE's workspace to evaluate any concerns regarding the toxic office environment or chemicals used therein, despite WHITE's complaints to HUBERGROUP and EDELMANN. Aside from the Report authored by Ms. Surface of HUBERGROUP's Human Resources Department, there are no known documented instances of any investigation or reports thereon pertaining to Plaintiff WHITE's workplace injuries and/or illness.

///

///

**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT**

# FIRST CAUSE OF ACTION
## NEGLIGENCE
### (Against All Defendants)

30.    Plaintiffs reallege paragraphs 1 through 29 above and incorporate them by this reference as though fully set forth herein.

31.    HUBERGROUP, as Plaintiff WHITE's employer since in or about April 2013 and EDELMANN, as owner/ operator of the facility where Plaintiff WHITE worked since 2015, each had a duty to use due care towards WHITE including, without limitation, the duties to provide a safe work place and adequate protection against any hazards therein, and to adequately warn of any hazards existing at the worksite.

32.    HUBERGROUP and EDELMANN negligently failed to exercise reasonable care by failing to provide adequate safety equipment to WHITE who was working with known dangerous chemicals.

33.    HUBERGROUP and EDELMANN exposed WHITE to dangerous toxins and chemicals known to cause cancer, birth defects, or other reproductive harm.

34.    Upon information and belief, Defendants continue to act carelessly, recklessly, and without regard to its employees or in-plant workers as they have still failed to provide safe conditions.

35.    Upon information and belief, HUBERGROUP and EDELMANN management and personnel were aware of the toxic environment WHITE was being exposed to daily.

36.    WHITE has suffered significant harm and damages as a result of Defendants' negligence. WHITE has been exposed to various chemicals known to be carcinogenic, which he would not have been exposed had Defendants exercised due care in an amount to be proved at trial.

37.    At all times herein, Defendants knew or should have known that the conduct described herein was not proper and was in violation of their duties as

-10-

employer and operator of a WHITE's workplace facility, such that Defendants created an unreasonable risk of harm to Plaintiff.

38.   As a direct and proximate result of the above-described negligence, carelessness, and recklessness by Defendants, WHITE was exposed to chemicals known to be carcinogenic and developed NHL. He has been forced to endure a severe, permanent, and progressive disease and his ability to function normally is greatly impaired. He suffers constant physical, psychological and mental pain, anguish, and severe emotional distress. This is all in addition to other substantial damages, the exact nature and full extent of which have yet to be ascertained. Plaintiff has incurred significant losses, expenses, and other damages that would not have otherwise been incurred, in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment as set forth below:

## SECOND CAUSE OF ACTION
### NEGLIGENCE PER SE
### (Against HUBERGROUP)

39.   Plaintiffs reallege paragraphs 1 through 38 above and incorporate them by this reference as though fully set forth herein.

40.   Pursuant to California Law (including Labor Code Sections 6400 and 6403 et. seq.), HUBERGROUP had a statutory duty to protect WHITE by providing proper ventilation in factories and workspaces it assigned its employees, especially where the employees were exposed to hazards. The California Labor Code Section 6400, in pertinent part, states that the employer has a statutory duty to "*provide and use safety devices and safeguards reasonably adequate to render the employment and place of employment safe.*" Moreover, the California Labor Code Section 6403 which, in pertinent part, states that the employer has a statutory duty to "*do every other thing reasonably necessary to protect the life, safety, and health of employees.*"

41.   WHITE is undoubtedly a member of the class of persons (i.e., an employee) that California Labor Code sections 6400 et. seq. and 6403 were designed

**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT**

to protect.

42.     Defendant HUBERGROUP violated the California Labor code Section 6400 and 6403 by failing to provide proper ventilation in its factories and workspaces and failing to provide proper personal protective equipment, especially where the employees, such as WHITE, were exposed to dangerous hazards.

43.     The violations of these laws were a substantial factor in causing WHITE's NHL and related injuries and damages by forcing him to inhale fumes and be exposed to known carcinogens.

44.     As a result of Defendant HUBERGROUP's negligence, WHITE was diagnosed with a deadly cancer (NHL) which causes severe physical symptoms such as, but are not limited to, ongoing discomfort pain and suffering, headaches, coughing, difficulty breathing, stomach problems, and chronic fatigue.

45.     In addition to these physical symptoms, Plaintiff WHITE has been forced to endure immense fear, battle intractable depression, anxiety, mental anguish, emotional distress, and loss of sleep. Moreover, he has suffered tremendous financial injury relating to the loss of income, out-of-pocket medical expenses, limited health insurance coverage, and the affordability of future treatments. This is all in addition to other substantial damages, the exact nature and full extent of which have yet to be ascertained. Plaintiff has incurred significant losses, expenses, and other damages that would not have otherwise been incurred, in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below:

### **THIRD CAUSE OF ACTION**
### **NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
### **(Against All Defendants)**

46.     Plaintiffs reallege paragraphs 1 through 45 above and incorporate them by this reference as though fully set forth herein.

47.     As Plaintiff WHITE's employer since on or about April 2013 and as the owner of the facility where Plaintiff WHITE worked since 2015, HUBERGROUP

-12-

and EDELMANN respectively, had a duty to use due care including without limitation, the duty to provide a safe work place, to provide adequate protection against any hazards in the work place, and to adequately warn of any hazards existing in the work place.

48.    Defendants breached their duty to protect WHITE by failing to provide proper ventilation in its respective factories and workspaces and failing to provide proper personal protective equipment, especially where the employees were exposed to hazards, thereby engaging in *extreme and outrageous* conduct.

49.    As result of the wrongdoings of the Defendants, WHITE has suffered and continues to suffer tremendous emotional distress stemming from his life-threatening illness. Also, he fears for his life and his family's future while suffering fear, anxiety, sleeplessness, anguish and great frustration, as his doctors have advised him that his tumors will likely never fully disappear. WHITE is rightfully distressed about the long-term effects of his cancer as well as his ability to provide for his family and address his medical needs.

50.    The Defendant's wrongdoings were a substantial factor in causing WHITE'S severe emotional distress including suffering, anxiety, loss of sleep, immense fear, battle intractable depression, mental anguish, nervousness, and grief.

51.    As a result of Defendants failing to provide a safe working environment for, WHITE was diagnosed with life-threatening NHL which continues to cause him great physical, mental, and/or nervous harm, suffering, and/or pain. This is all in addition to other substantial damages, the exact nature and full extent of which have yet to be ascertained. Plaintiff has incurred significant losses, expenses, and other damages that would not have otherwise been incurred, in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below:

///

///

PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## FOURTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants)

52.    Plaintiffs reallege paragraphs 1 through 51 above and incorporate them by this reference as though fully set forth herein.

53.    Defendant HUBERGROUP employed WHITE and Defendant EDELMANN owned the premises on which he worked.

54.    Defendants intended to cause WHITE emotional distress by failing to provide proper ventilation in its respective factories and workspaces and failing to provide proper personal protective equipment, especially where the employees, such as WHITE, were exposed to hazards, thereby engaging in extreme and outrageous conduct.

55.    Defendants acted with reckless disregard of the probability that WHITE would suffer emotional distress knowing that WHITE was being exposed to toxic chemicals without providing proper ventilation and adequate PPE which could cause dire health problems.

56.    WHITE routinely complained about headaches, the smell, and the miserable, poor ventilation of his office. Further, Plaintiff WHITE's co-workers made repeated negative comments on the conditions of Plaintiff WHITE's workspace and yet, no action was taken by management of either defendant.

57.    In fact, it took over approximately three (3+) years for EDELMANN to offer any kind of intervention and HUBERGROUP failed to provide any relief despite knowledge of the toxic conditions. At no time did HUBERGROUP or EDELMANN engage in proactive steps to determine which intervention and/or accommodation would be most appropriate to abate Plaintiff WHITE's toxic exposures. Subjecting Plaintiff WHITE to known carcinogens in a cramped environment without breathable/ fresh air clearly constitutes *extreme and outrageous* conduct.

58.    As result of the wrongdoings of the Defendants, WHITE has suffered

**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT**

and continues to suffer tremendous emotional distress stemming from his illness. Also, he fears for his life and his family's future while suffering fear, anxiety, sleeplessness, anguish and great frustration, as his doctors have advised him that his tumors will likely never fully disappear. WHITE is rightfully distressed about the long-term effects of his cancer as well as his ability to provide for his family and address his medical needs.

59.    The Defendant's wrongdoings were a substantial factor in causing WHITE'S severe emotional distress including suffering, anxiety, loss of sleep, immense fear, battle intractable depression, mental anguish, nervousness, and grief. This is all in addition to other substantial damages, the exact nature and full extent of which have yet to be ascertained. Plaintiff has incurred significant losses, expenses, and other damages that would not have otherwise been incurred, in an amount to be determined at trial.

60.    As a result of Defendants disregard for WHITE's health, WHITE was diagnosed with life-threatening NHL which continues to cause him great physical, mental, and/or nervous harm, suffering, and/or pain.

61.    The conduct of Defendants alleged herein was fraudulent, malicious, and oppressive within the meaning of California Civil Code section 3294, and therefore punitive/exemplary damages should be imposed against Defendants in amounts according to proof.

WHEREFORE, Plaintiff prays for judgment as set forth below:

### FIFTH CAUSE OF ACTION
### FAILURE TO WARN

### COUNT ONE: NEGLIGENT FAILURE TO WARN

### (Against All Defendants)

62.    Plaintiffs reallege paragraphs 1 through 61 above and incorporate them by this reference as though fully set forth herein.

**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT**

63.    HUBERGROUP and EDELMANN manufactured, sold, and supplied products containing chemicals known to be carcinogenic.

64.    WHITE's job was to mix ink for these products. Without proper ventilation and proper personal protective equipment, the chemicals and toxins in the materials pose great dangers to human health.

65.    HUBERGROUP and EDELMANN knew or should have known that these products contained hazardous chemicals and toxins and that they were dangerous when used in the foreseeable manner in which WHITE was exposed. Defendants knew or should have known that the products contained chemicals known to cause cancer and birth defects or other reproductive harm.

66.    HUBERGROUP and EDELMANN knew or should have known that WHITE would not realize the danger he was being exposed to as they failed to provide adequate health and safety trainings during WHITE's years of work with the companies.

67.    Nonetheless, Defendants failed to provide any adequate warnings to WHITE that he was exposed to chemicals known to cause cancer. Similarly, no warning labels nor warning signs of any kind were posted, even with WHITE's work area having poor ventilation where toxins were present and uncovered.

68.    Similarly situated Defendants would have warned their workers of such dangers.

69.    This failure to adequately warn was a substantial factor in causing WHITE's cancer, subsequent physical symptoms, and emotional distress outlined herein.

70.    As a direct and proximate result of WHITE's prolonged exposure to the dangerous carcinogenic chemicals, WHITE developed life-threatening NHL and suffered significant damages. As a result, he has been forced to live with a severe, permanent, and deadly progressive cancer and his ability to function normally has diminished substantially. HUBERGROUP and EDELMANN showed complete

**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT**

1  indifference and a conscious disregard for the safety and welfare of WHITE through

2  their actions, or lack thereof. This is all in addition to other substantial damages, the

3  exact nature and full extent of which have yet to be ascertained. Plaintiff has incurred

4  significant losses, expenses, and other damages that would not have otherwise been

5  incurred, in an amount to be determined at trial.

6       WHEREFORE, Plaintiff prays for judgment as set forth below:

7

8  **COUNT TWO: STATUTORY FAILURE TO WARN**
**[CAL/ OSHA Code of Regulations Section 340.2 and California Proposition 65,**
9  **the Safe Drinking Water & Toxic Enforcement Act of 1986**
10  **(CA Health & Safety Code 25249.5 et seq.)]**
11  **(Against All Defendants)**

12       71.    Plaintiffs reallege paragraphs 1 through 70 above and incorporate them

13  by this reference as though fully set forth herein.

14       72.    CAL/ OSHA (The Occupational Safety & Health Administration) Code

15  of Regulations Section 340.2 and California Proposition 65, the Safe Drinking Water

16  and Toxic Enforcement Act of 1986 (CA Health & Safety Code 25249.5 et seq.))

17  mandates that whenever an employee has been or is being exposed to toxic materials

18  or harmful physical agents in concentrations or at levels exceeding those prescribed

19  by applicable industry standards, the employer of the affected employee must

20  promptly notify the employee so affected in writing of the fact that the employee has

21  been exposed, and of the corrective action being taken by the employer.

22       73.    California statutory law – Proposition 65 "*requires businesses to provide*

23  *warnings ... about significant exposures to chemicals that cause cancer, birth defects*

24  *or other reproductive harm. These chemicals can be in the products that Californians*

25  *purchase, in their homes or workplaces, or that are released into the environment. By*

26  *requiring that this information be provided, Proposition 65 enables Californians to*

27  *make informed decisions about their exposures to these chemicals.*"

28       74.    HUBERGROUP and EDELMANN manufactured, sold, and supplied

-17-

**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT**

products containing chemicals known to be carcinogenic.

75. WHITE's job was to mix ink for these products. Without proper ventilation and proper personal protective equipment, the chemicals and toxins in the materials pose great dangers to human health. WHITE had been exposed to toxic materials or harmful physical agents in concentrations or at levels exceeding those prescribed by applicable industry standards.

76. HUBERGROUP and EDELMANN knew or should have known that these products contained hazardous chemicals and toxins and that they were dangerous when used in the foreseeable manner in which WHITE was exposed. Defendants knew or should have known that the products contained chemicals known to cause cancer and birth defects or other reproductive harm.

77. HUBERGROUP and EDELMANN knew or should have known that WHITE would not realize the danger he was being exposed to as they failed to provide adequate health and safety trainings during WHITE's years of work with the companies.

78. In violation of CAL/ OSHA Code of Regulations Section 340.2 and California Proposition 65, the Safe Drinking Water and Toxic Enforcement Act of 1986 (CA Health & Safety Code 25249.5 et seq.)), Defendants, and each of them, failed to provide the required "*clear and reasonable*" statutory warnings to WHITE that he was exposed to chemicals known to cause cancer. Similarly, no warning labels nor warning signs of any kind were posted, even with WHITE's work area having poor ventilation where toxins were present and uncovered. Defendants further violated statutory law for failing to take corrective action.

79. Defendants' statutory failure to warn was a substantial factor in causing WHITE's cancer, subsequent physical symptoms, and emotional distress outlined herein.

80. As a direct and proximate result of Defendants' statutory failure to warn, WHITE had prolonged exposure to dangerous carcinogenic chemicals and developed

life-threatening cancer and suffered significant harm and damages. As a result, he has been forced to live with a severe, permanent, and deadly progressive NHL cancer and his ability to function normally has diminished substantially. HUBERGROUP and EDELMANN showed complete indifference and a conscious disregard for the safety and welfare of WHITE through their actions, or lack thereof. This is all in addition to other substantial damages, the exact nature and full extent of which have yet to be ascertained. Plaintiff has incurred significant losses, expenses, and other damages that would not have otherwise been incurred, in an amount to be determined at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below:

## SIXTH CAUSE OF ACTION
### STRICT LIABILITY – ULTRAHAZARDOUS ACTIVITIES
### (Against All Defendants)

81.    Plaintiffs reallege paragraphs 1 through 80 above and incorporate them by this reference as though fully set forth herein.

82.    Defendants were engaged in facilitating the mixing of dangerous toxic chemicals without proper safeguards. Defendants knew or should have known that the dangerous chemicals were known to cause cancer and birth defects or other reproductive harm. Defendants compelled WHITE to participate in this ultrahazardous activity.

83.    Due to the exposure of the toxic chemicals, WHITE developed life-threatening NHL. Developing cancers, including NHL, from breathing in toxic fumes without proper protective equipment or ventilation is an anticipated result of the ultra-hazardous risk created by Defendants.

84.    Defendants' actions, or lack thereof, were a substantial factor in causing WHITE's NHL and related damages by forcing him to inhale fumes and be exposed to known carcinogens nearly every day for hours on ends, every week, for over four (4½+) years.

85.    As a result of Defendants wrongdoing, WHITE was diagnosed with a

-19-

deadly cancer which causes physical symptoms such as, but are not limited to ongoing discomfort pain and suffering, headaches, coughing, difficulty breathing, stomach problems, and chronic fatigue.

86.     In addition to these physical symptoms, Plaintiff WHITE has been forced to endure immense fear, battle intractable depression, anxiety, mental anguish, emotional distress, and loss of sleep. Moreover, he has suffered tremendous financial injury relating to the loss of income, out-of-pocket medical expenses, limited health insurance coverage, and the affordability of future treatments. This is all in addition to other substantial damages, the exact nature and full extent of which have yet to be ascertained. Plaintiff has incurred significant losses, expenses, and other damages that would not have otherwise been incurred, in an amount to be determined at trial.

87.     The conduct of Defendants alleged herein was fraudulent, malicious, and oppressive within the meaning of California Civil Code section 3294, and therefore punitive/exemplary damages should be imposed against Defendants in amounts according to proof.

WHEREFORE, Plaintiff prays for judgment as set forth below:

### SEVENTH CAUSE OF ACTION
### FRAUD AND DECEIT – CONCEALMENT
### (Against All Defendants)

88.     Plaintiff realleges paragraphs 1 through 87 above and incorporate them by this reference as though fully set forth herein.

89.     Plaintiff is informed and believes, and thereon alleges that Defendants knew or reasonably should have known of the toxicity in the facility based on the chemicals they knew were in use.

90.     Plaintiff is informed, believes and thereon alleges that Defendants intentionally failed to disclose to Plaintiff the true extent and risk associated with the carcinogenic chemicals WHITE was exposed to at his workplace.

91.     Despite WHITE's multiple complaints to HUBERGROUP and

EDELMANN management and personnel, neither provided appropriate responses or accommodation. In fact, it took over approximately three years for EDELMANN to offer any kind of intervention and HUBERGROUP failed to provide any relief.

92.    At no time did HUBERGROUP or EDELMANN engage in proactive steps to determine which intervention and/or accommodation would be most appropriate to abate Plaintiff WHITE's toxic exposures. As such, their failure to take appropriate action or explain why WHITE was suffering from headaches and breathing issues, among other things, shows Defendants were hiding information about the toxicity of the environment. Thus, Defendants intended to conceal the toxicity of the environment from WHITE.

93.    WHITE did not know of the toxicity and dangerous chemicals that he was being exposed to in his workplace could result in cancer as there were no safety/health trainings nor any signs posted in the facility to suggest he should think otherwise.

94.    Had WHITE known the damage the toxicity and hazardous chemicals could pose, WHITE would have behaved differently, such as finding another occupation.

95.    As a direct and proximate result of WHITE's prolonged exposure to the dangerous carcinogenic chemicals, WHITE developed NHL. As a result, he has been forced to live with a severe, permanent, and deadly progressive cancer and his ability to function normally has diminished substantially. HUBERGROUP and EDELMANN showed complete indifference and a conscious disregard for the safety and welfare of WHITE.

96.    As a result of the wrongdoings of the Defendants, WHITE was diagnosed with NHL which continues to cause him great physical, mental, and/or nervous harm, suffering, and/or pain. This is all in addition to other substantial damages, the exact nature and full extent of which have yet to be ascertained. Plaintiff has incurred significant losses, expenses, and other damages that would not

have otherwise been incurred, in an amount to be determined at trial.

97.    The conduct of Defendants alleged herein was fraudulent, malicious, and oppressive within the meaning of California Civil Code section 3294, and therefore punitive/exemplary damages should be imposed against Defendants in amounts according to proof.

WHEREFORE, Plaintiff prays for judgment as set forth below:

## EIGHTH CAUSE OF ACTION
### BATTERY – TOXIC TRESPASS
### (Against All Defendants)

98.    Plaintiffs reallege paragraphs 1 through 97 above and incorporate them by this reference as though fully set forth herein.

99.    HUBERGROUP and EDELMANN intentionally caused WHITE to introduce hazardous substances into his system.

100.    HUBERGROUP and EDELMANN knew of the chemical carcinogens in its facility, especially in WHITE's poorly ventilated workspace, and did not provide adequate personal safety equipment to WHITE, thereby intending harmful and offensive contact with the hazardous substances.

101.    WHITE did not consent to being exposed to the toxic chemicals and as such, was harmed both physically and mentally by the unwanted presence of unavoidable chemicals he was forced to be exposed to. On information and belief, the route of exposure for these chemicals was inhalation (breathing), skin (or eye) absorption contact, and/or ingestion by Plaintiff. As described herein, these exposures occurred on a daily basis, at least 5-6 days a week, for a period of several years.

102.    These chemicals generally cause the kinds of injuries suffered WHITE, including but not limited to NHL cancer. Considering WHITE spent approximately 10-11 hours a day for over four (4½+) years in the poorly ventilated, toxic environment, the chemical exposures caused WHITE's NHL.

103.    As a direct and proximate result of WHITE's prolonged exposure to the

dangerous carcinogenic chemicals, WHITE developed NHL. As a result, he has been forced to live with a severe, permanent, and deadly progressive cancer and his ability to function normally has diminished substantially. HUBERGROUP and EDELMANN showed complete indifference and a conscious disregard for the safety and welfare of WHITE.

104.    As a further result of Defendants wrongdoing, WHITE suffers from physical symptoms such as, but are not limited to ongoing discomfort pain and suffering, headaches, coughing, difficulty breathing, stomach problems, and chronic fatigue. In addition to these physical symptoms, Plaintiff WHITE has been forced to endure immense fear, battle intractable depression, anxiety, mental anguish, emotional distress, and loss of sleep. Moreover, he has suffered tremendous financial injury relating to the loss of income, out-of-pocket medical expenses, limited health insurance coverage, and the affordability of future treatments. This is all in addition to other substantial damages, the exact nature and full extent of which have yet to be ascertained. Plaintiff has incurred significant losses, expenses, and other damages that would not have otherwise been incurred, in an amount to be determined at trial.

105.    The conduct of Defendants alleged herein was fraudulent, malicious, and oppressive within the meaning of California Civil Code section 3294, and therefore punitive/exemplary damages should be imposed against Defendants in amounts according to proof.

WHEREFORE, Plaintiff prays for judgment as set forth below:

## NINTH CAUSE OF ACTION
### PREMISES LIABILITY
### (Against All Defendants)

106.    Plaintiffs reallege paragraphs 1 through 105 above and incorporate them by this reference as though fully set forth herein.

107.    Defendant EDELMANN operated, owned, maintained, and controlled the facility located at 2150 S. Parco Avenue, Ontario (San Bernardino County)

California 91761 where WHITE worked.

108.  As HUBERGROUP operated, managed, and controlled certain aspects of the EDELMANN facility, HUBERGROUP also had a duty to provide a reasonably safe condition and to eliminate dangerous conditions.

109.  As the owner, operator, and controller of the facility where WHITE worked, EDELMANN and HUBERGROUP respectively, had a duty to use due care to provide a reasonably safe condition and to eliminate dangerous conditions.

110.  Defendants failed to maintain the property by constantly exposing WHITE to toxic and carcinogenic chemicals without proper ventilation or protective equipment to protect him.

111.  WHITE has suffered significant harm as a result of Defendants' conduct. WHITE has been exposed to various chemicals known to be carcinogenic, which he would not have been exposed had Defendants exercised due care in an amount to be proved at trial. Ultimately, WHITE developed NHL which likely could have been prevented with proper safeguards.

112.  Defendant's' actions, or lack thereof, were a substantial factor in causing WHITE's NHL and related damages by forcing him to inhale fumes and be exposed to known carcinogens.

113.  At all times herein, Defendants knew or should have known that the conduct described herein was not proper and was in violation of their duties as employer and owner/ operator of WHITE's workplace facility, such that Defendants created an unreasonable risk of harm to Plaintiff.

114.  Defendants either knew or should have known carcinogenic chemicals were produced from the paints, inks, coatings, and cleaning chemicals, and that improper ventilation increased the risk of exposure. WHITE routinely complained to Defendants about headaches, the smell, and needing proper ventilation. Further, other employees and supervisors of WHITE commented on the conditions in WHITE's workplace and yet, no action was taken by Defendants.

-24-

115.  It took over three (3+) years for EDELMANN to offer any kind of intervention and when it did, it provided an inadequate fan. HUBERGROUP failed to provide any relief at all. WHITE did not know the grave health risks he was forced to undertake by being exposed to these toxic chemicals.

116.  As a direct and proximate result of the above-described misconduct, carelessness, and recklessness by Defendants, WHITE was exposed to chemicals known to be carcinogenic and developed NHL. He has been forced to endure a severe, permanent, and progressive disease and his ability to function normally is greatly impaired. He suffers constant physical, psychological and mental pain, anguish, and severe emotional distress. This is all in addition to other substantial damages, the exact nature and full extent of which have yet to be ascertained. Plaintiff has incurred significant losses, expenses, and other damages that would not have otherwise been incurred, in an amount to be determined at trial.

117.  As a further result of the Defendants' acts and omissions, WHITE suffers from NHL and physical symptoms such as, but are not limited to, ongoing discomfort pain and suffering, headaches, coughing, difficulty breathing, stomach problems, and chronic fatigue. In addition to these physical symptoms, Plaintiff WHITE has been forced to endure immense fear, battle intractable depression, anxiety, mental anguish, emotional distress, and loss of sleep. Moreover, he has suffered tremendous financial injury relating to the loss of income, out-of-pocket medical expenses, limited health insurance coverage, and the affordability of future treatments, among other damages.

WHEREFORE, Plaintiffs pray for judgment as set forth below:

///

///

///

///

///

**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT**

## TENTH CAUSE OF ACTION
### DISCRIMINATION BASED ON DISABILITY STATUS – FAILURE TO PROVIDE REASONABLE ACCOMMODATION
### [In Violation of California Government Code §§ 12940(a),(h)]
### (Against HUBERGROUP)

118.    Plaintiffs reallege paragraphs 1 through 117 above and incorporate them by this reference as though fully set forth herein.

119.    At all times mentioned in this Complaint, Defendant HUBERGROUP was WHITE's employer.

120.    The Fair Employment and Housing Act ("FEHA") prohibits (among other things) discrimination and retaliation by employers in the workplace (Cal. Gov. Code, §§ 12940(a) [discrimination], (h) retaliation). Plaintiff's protected status under the FEHA is his disability status resulting from his NHL and medical condition.

121.    As Plaintiff's employer, HUBERGROUP knew or should have known, perceived, and believed WHITE had the aforementioned protected status because WHITE complained to HUBERGROUP personnel that he was suffering from headaches, difficulty breathing, and requested proper ventilation in his workspace for years.

122.    Despite the toxic environment and refusal to accommodate him, WHITE performed his duties as an ink technician.

123.    As WHITE was suffering great pain, he took a leave of absence in 2019 and has not returned to work. As such, WHITE was constructively discharged.

124.    WHITE's NHL and the symptoms it causes were a substantial motivating reason for HUBERGROUP's constructive discharge.

125.    As a direct and proximate result of HUBERGROUP's willful, knowing, and intentional discrimination, WHITE has sustained and continues to sustain substantial damages.

126.    Because of this constructive discharge, WHITE has suffered tremendous financial injury relating to the loss of income, out-of-pocket medical expenses,

limited health insurance coverage, and the affordability of future treatments. This is in addition to other substantial damages, the exact nature and full extent of which have yet to be ascertained. Plaintiff has incurred significant losses, expenses, and other damages that would not have otherwise been incurred, in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray for judgment as set forth below:

## **PRAYER FOR RELIEF**

### **AS TO THE FIRST CAUSE OF ACTION: [NEGLIGENCE]**

1.    For general damages, according to proof;

2.    For compensatory damages, according to proof;

3.    For consequential damages, according to proof;

4.    For special damages, according to proof;

5.    For pain & suffering;

6.    For costs of suit herein, including prejudgment interest; and

7.    For any such other and further relief as the Court determines is just and proper.

### **AS TO THE SECOND CAUSE OF ACTION: [NEGLIGENCE PER SE]**

1.    For general damages, according to proof;

2.    For compensatory damages, according to proof;

3.    For consequential damages, according to proof;

4.    For special damages, according to proof;

5.    For pain & suffering;

6.    For costs of suit herein, including prejudgment interest; and

7.    For any such other and further relief as the Court determines is just and proper.

///

///

## AS TO THE THIRD CAUSE OF ACTION: [NIED]

1. For general damages, according to proof;
2. For compensatory damages, according to proof;
3. For consequential damages, according to proof;
4. For special damages, according to proof;
5. For pain & suffering;
6. For costs of suit herein, including prejudgment interest; and
7. For any such other and further relief as the Court determines is just and proper.

## AS TO THE FOURTH CAUSE OF ACTION: [IIED]

1. For general damages according to proof;
2. For compensatory damages according to proof;
3. For consequential damages, according to proof;
4. For special damages, according to proof;
5. For pain and suffering;
6. For punitive and exemplary damages according to proof;
7. For cost of suit herein, including pre-judgment interest; and
8. For any such other and further relief as the Court determines is just and proper.

## AS TO THE FIFTH CAUSE OF ACTION: [FAILURE TO WARN]

### COUNT ONE: [NEGLIGENT FAILURE TO WARN]

1. For general damages, according to proof;
2. For compensatory damages, according to proof;
3. For consequential damages, according to proof;
4. For special damages, according to proof;
5. For pain & suffering;
6. For costs of suit herein, including prejudgment interest; and

7.  For any such other and further relief as the Court determines is just and proper.

**COUNT TWO: [STATUTORY FAILURE TO WARN]**

1.  For general damages, according to proof;

2.  For compensatory damages, according to proof;

3.  For consequential damages, according to proof;

4.  For special damages, according to proof;

5.  For pain & suffering;

6.  For statutory damages, according to proof;

7.  For injunctive & declaratory relief;

8.  For costs of suit herein, including prejudgment interest; and

9.  For any such other and further relief as the Court determines is just and proper.

**AS TO THE SIXTH CAUSE OF ACTION: [STRICT LIABILITY]**

1.  For general damages according to proof;

2.  For compensatory damages according to proof;

3.  For consequential damages, according to proof;

4.  For special damages, according to proof;

5.  For pain & suffering;

6.  For punitive and exemplary damages according to proof;

7.  For cost of suit herein, including pre-judgment interest; and

8.  For any such other and further relief as the Court determines is just and proper.

**AS TO THE SEVENTH CAUSE OF ACTION:  [FRAUDULENT CONCEALMENT]**

1.  For general damages according to proof;

2.  For compensatory damages according to proof;

3.  For consequential damages, according to proof;

4.  For special damages, according to proof;

**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT**

5.     For punitive and exemplary damages according to proof;

6.     For cost of suit herein, including pre-judgment interest; and

7.     For any such other and further relief as the Court determines is just and proper.

## AS TO THE EIGHTH CAUSE OF ACTION: [BATTERY-TOXIC TRESPASS]

1.     For general damages according to proof;

2.     For compensatory damages according to proof;

3.     For consequential damages, according to proof;

4.     For special damages, according to proof;

5.     For punitive and exemplary damages according to proof;

6.     For cost of suit herein, including pre-judgment interest; and

7.     For any such other and further relief as the Court determines is just and proper.

## AS TO THE NINTH CAUSE OF ACTION:  [PREMISES LIABILITY]

1.     For general damages according to proof;

2.     For compensatory damages according to proof;

3.     For consequential damages, according to proof;

4.     For special damages, according to proof;

5.     For pain and suffering;

6.     For cost of suit herein, including pre-judgment interest; and

7.     For any such other and further relief as the Court determines is just and proper.

## AS TO THE TENTH CAUSE OF ACTION:  [DISABILITY DISCRIMINATION]

1.     For general damages according to proof;

2.     For compensatory damages according to proof;

3.     For consequential damages, according to proof;

4.     For special damages, according to proof;

5.     For pain and suffering;

**PLAINTIFF CHRISTOPHER WHITE'S COMPLAINT**

6.    For statutory damages, according to proof;

7.    For cost of suit herein, including pre-judgment interest; and

8.    For any such other and further relief as the Court determines is just and proper.

Respectfully submitted,

DATED: February 17, 2021    **SIDDIQUI LAW, APC**

By: _____
**OMAR A. SIDDIQUI, ESQ.**
**DANIEL M. JOSEPHSON, ESQ.**
Attorneys for Plaintiff,
**CHRISTOPHER WHITE**

## **DEMAND FOR JURY TRIAL**

Plaintiff CHRISTOPHER WHITE hereby demands a trial by jury on all claims and causes of action asserted in his Complaint.

Respectfully submitted,

DATED: February 17, 2021    **SIDDIQUI LAW, APC**

By: _____
**OMAR A. SIDDIQUI, ESQ.**
**DANIEL M. JOSEPHSON, ESQ.**
Attorneys for Plaintiff,
**CHRISTOPHER WHITE**

-31-